IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

**KATHERINE A. HOOVER, as the
duly appointed Administrator of the
Estate of Michael Tomasic, deceased,**

         **Plaintiff**

v.                                                  **Civil Action No. 1:07cv00047-IMK**

**GEORGE TRENT,**
**Administrator,**
**North Central Regional Jail**

**ROGER ELDER,**
**Lieutenant,**
**North Central Regional Jail**

**THOMAS MCCRAY,**
**Sergeant,**
**North Central Regional Jail**

**LISLE ELDER,**
**Correctional Officer II,**
**North Central Regional Jail**

**WESLEY STEWART,**
**Correctional Officer II,**
**North Central Regional Jail**

**TIMOTHY "SCOTT" GAIN,**
**Correctional Officer II,**
**North Central Regional Jail**

**JOHN and JANE DOES 1-10,**
**Unidentified individuals working at**
**North Central Regional Jail.**

         **Defendants.**

## COMPLAINT

### I. Introduction

1. Dr. Katherine A. Hoover is the mother and duly appointed administrator of the estate of Michael Tomasic ("Michael"), who died after being beaten and abused while housed at North Central Regional Jail, in Greenwood, Doddridge County, West Virginia on September 29 and 30, 2005. Dr. Hoover brings this action to recover actual damages arising out of the death of Michael Tomasic as a consequence of the wrongful acts of the defendants, all as are more fully set forth below. Dr. Hoover also seeks punitive damages to punish Defendants' intentional, willful, and wanton misconduct and forever deter its repetition.

### II. Jurisdiction and Venue

2. Plaintiff brings this action pursuant to the provisions under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the death of her son, Michael Tomasic, by wrongful acts, such acts constituting gross and unconscionable violations of the rights, privileges and immunities guaranteed to Michael under the Fourth, Tenth and Fourteenth Amendments to the Constitution of the United States. Accordingly, this Court has subject matter jurisdiction over this case pursuant to the provisions of 38 U.S.C. §§ 1331 and 1343. Plaintiff also brings this action pursuant to the provision under West Virginia Code § 55-7-5 for the wrongful death of Michael at the hands of the Defendants as well as injuries and pursuant to West Virginia Code § 55-7-8 damages sustained by Michael at the hands of the Defendants between the time of injury and his death.. This court may exercise jurisdiction over this pendent state law claims pursuant to 28 U.S.C. § 1367.

3. The facts underlying this cause of action occurred primarily, if not exclusively, in Doddridge County, West Virginia, making the Northern District of West Virginia, Clarksburg Division, the proper venue for this action.

### III.  Parties

4. Defendant Trent is, and was at all relevant times, Administrator of the North Central Regional Jail ("NCRJ") in Doddridge County, West Virginia. Defendant Trent is and was responsible for promulgating policies governing the operations of NCRJ, and the treatment of individuals housed therein providing training to employees of the NCRJ with respect to those policies, supervising the conduct of employees of the NCRJ, ensuring the safety and proper medical treatment of individuals housed therein at the NCRJ, and ensuring that thorough, complete and impartial investigations into alleged misconduct by employees of NCRJ are conducted and appropriate remedial actions taken.

5. Defendant Elder is the Lieutenant at the NCRJ. Defendant Elder is and was responsible for the supervision of employees of the NCRJ, ensuring the safety and proper medical treatment of individuals housed at the NCRJ, and is the chief law enforcement officer at the NCRJ.

6. Defendant McCray was, at all relevant times, a Sergeant at the NCRJ and was responsible for the supervision and command of correctional officers, supervision and command of certain areas of the NCRJ, supervision and control of inmates at the NCRJ, and ensuring the safety and proper medical treatment of inmates at the NCRJ.

7. Defendants Elder, Stewart, Gain, and John and Jane Does were at all relevant times, Correctional Officers or other employees or independent contractors working under color of state law at the NCRJ. These Defendants were responsible for supervision and command of certain areas of the jail as well as for supervision, control, and safety of individuals housed in certain areas of the jail.

8.    Each of the Defendants, by virtue of their respective positions bestowed upon them by the State of West Virginia, were, at all relevant times, acting under color of state law.

### IV.  Facts

9.    On the evening of September 29, 2005, the decedent, Michael Tomasic, was arrested and charged with misdemeanor trespassing and transported and booked into the North Central Regional Jail ("NCRJ") in Doddridge County, West Virginia.

10.   According to NCRJ's records, Michael was given an intake interview upon arrival at the NCRJ at approximately 11:50 p.m. on September 29. The intake interviewer's notes and records show that Mr. Tomasic was physically healthy upon arrival at the NCRJ.

11.   On September 30, at approximately 8:25 a.m., less than nine hours after being booked into the NCRJ, Michael was discovered in his cell in an unresponsive condition and obvious acute physical distress.

12.   At approximately 9:21 a.m. that same morning, Michael was transported by ambulance from the NCRJ to United Hospital Center ("UHC") in Clarksburg, WV.

13.   Upon arrival at UHC, Michael's body temperature was found to be 33° C (91° F), which temperature later dropped as low as 32° C (89.6° F).

14.   Testing performed at UHC showed Michael tested negative for the presence of both drugs and alcohol.

15.   CT scans performed at UHC did, however, reveal the presence of an abnormal accumulation of fluid in Michael's lungs (a condition called pulmonary edema) and the abnormal presence of air in Michael's pleural cavity (a condition called pneumothorax), in the area between the pleural sacs of Michael's lungs (a condition called pneumomediastinum), in the membrane surrounding Michael's abdomen (a condition called pneumoperitneum), and in the

soft tissues of Michael's neck.  A further CT scan revealed asymmetrical lung markings in the left lung consistent with a contusion to the area.

16. Michael died at UHC on October 7, 2005 without ever regaining full consciousness after leaving NCRJ on September 30.

17. Between the time of his admission to UHC and his death, the Defendants failed or otherwise refused to provide Michael's attending physician with complete and accurate information regarding the events occurring at NCRJ during the approximate nine hours between the time he was booked into that facility in a physically fit condition and the time he was found unresponsive in his cell.  This failure impeded the ability of Michael's physicians to provide him with effective medical care and proximately caused his subsequent death.

18. An autopsy was performed on Michael's body by Dr. Cyril Wecht, who reached a pathological diagnoses of hypothermia, anoxic encephalopathy (loss of oxygen to the brain), respiratory arrest, pulmonary atelectasis (collapsed lung), acute pulmonary edema (fluid in the lungs), acute pulmonary congestion (blood in the lungs), acute tracheobronchitis, and bronchopnuemonia, bilateral.  None of the foregoing conditions are consistent with an individual in obvious good health prior to being booked into the NCRJ.

19. Dr. Richard Daffner, Director of Emergency, Musculoskeletal, and Trauma Radiology at Allegheny General Hospital in Pittsburgh, Pennsylvania, concluded, based upon thirty-years experience in the trauma setting and a review of Michael's CT scans that, prior to his death, Michael sustained fractures to his ribs and that Michael's severe injuries to his head, neck, lungs, thorax, and abdomen were consistent with massive blunt force trauma.  None of those conditions are consistent with an individual in obvious good health prior to being booked into the NCRJ.

20. The Defendants have failed or otherwise refused to offer any explanation as to how Michael went from being physically well to, less than nine hours later, suffering from hypothermia and having severe injuries to his head, neck, lungs, thorax and abdomen consistent with blunt force trauma.

21. Upon information and belief, Plaintiff avers that, while housed at the NCRJ on September 29 and September 30, under the direct supervision and control of Defendants McCray, Elder, Gain, Stewart, and/or John Does 1-10, Michael was subjected to a severe beating and abuse by one or more of said Defendants, which beating and abuse proximately caused his death.

22. Upon information and belief, Plaintiff further avers that to the extent Defendants McCray, Elder, Gain, Stewart, and/or John Does 1-10 did not actively participate in the beating and abuse of Michael, they stood by, watched, acquiesced in, and took no actions to prevent or abate that beating and abuse of Michael, all in breach of the duty owed to him.

23. Upon information and belief, Plaintiff also avers that after beating and abusing Michael or acquiescing in that, the above-named defendants were deliberately indifferent to Michael's injuries and rapidly deteriorating physical condition, all in further breach of the duty owed him.

24. In the alternative, Plaintiff avers that, if Michael, at the time he was booked into the NCRJ was suffering from suffering from hypothermia and severe injuries to his head, neck, lungs, thorax and abdomen consistent with blunt force trauma as was evident upon his admission to UHC, that would and should have been apparent to Defendants McCray, Elder, Gain, Stewart and/or John Does 1-10 and immediate medical care sought. Their failure to do so and their

indifference to those conditions over the subsequent hours during which he was housed at the NCRJ were in breach of the duty owed Michael by these defendants.

25. As a direct and proximate result of the foregoing action and/or inactions of Defendants McCray, Elder, Gain, Stewart and/or John Does 1-10, Michael was deprived of the rights, privileges and immunities guaranteed to him by the Fourth, Tenth and Fourteenth Amendments to the Constitution of the United States, all of which resulted in his wrongful death.

26. Upon information and belief, Plaintiff avers Defendants Elder and Trent, prior to Michael's incarceration on September 29, 2005, knew or should have known of the ongoing problem of violence committed against individuals housed at the NCRJ by Defendants McCray, Elder, Gain, Stewart, and/or John Does 1-10 and by other NCRJ employees. Defendants Elder and Trent also knew or should have known prior to Michael's incarceration on September 29, 2005, that such acts of violence were likely to be committed against individuals housed at the NCRJ by employees of that facility. Notwithstanding that, Defendants Elder and Trent failed to take any action to prevent the further infliction of violence on inmates at the NCRJ. The failure to take such action, including without limitation the failure to properly supervise, was a direct and proximate cause of the deprivation of Michael's civil rights and his subsequent death.

27. Defendants Elder and Trent, prior to Michael's incarceration on September 29, 2005, failed to implement policies and procedures to prevent future and/or abate ongoing violence committed by NCRJ employees against inmates. The failure to implement such proper policies and procedures was a direct and proximate cause of the deprivation of Michael's civil rights and his subsequent death.

### IV. Causes of Action

28. Paragraphs 1-27 are incorporated as if fully set forth here.

29.     Because Defendants, acting under color of state law took actions that constitute excessive force, cruel and unusual punishment, and a deprivation of life and liberty without due process of law, thereby violating Michael Tomasic's Fourth, Tenth, and Fourteenth Amendment rights in contravention of 42 U.S.C. § 1983.  These wrongful actions were the direct and proximate cause of Michael's death.

30.     By their actions, Defendants have committed the torts of assault and battery, negligence, gross negligence, outrage and intentional infliction of emotional distress against Michael that resulted in pain and suffering and mental distress prior to his death for which recovery is authorized pursuant to the provisions of West Virginia Code § 55-7-8.

31.     By their actions, Defendants caused the wrongful death of Michael for which recovery is authorized under West Virginia Code § 55-7-5.

### V.  Jury Demand

31.     Plaintiff demands a trial by jury.

### VI.  Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

A.      Actual damages, including, but not limited to damages for:

   i.     Compensation for reasonably expected loss of income of Michael during the remainder of his normal life expectancy;

   ii.    Expenses for the care, treatment and hospitalization of Michael incident to the injuries inflicted upon him and resulting in his death, including funeral expenses;

   iii.   Sorrow, mental anguish and solace inflicted upon Michael's surviving parents and siblings; and

        ii.       Pain and suffering inflicted upon Michael prior to the time of his death;

B.      Exemplary and punitive damages

C.      Injunctive relief to prevent this type of unwarranted abuse in the future;

D.      Attorneys' fees and costs;

E.      Any and all such other relief that the court may deem appropriate.

**KATHERINE HOOVER, Plaintiff**

**By Counsel**

 /s/ W. Henry Jernigan, Jr.
Henry Jernigan, Jr. (WVSB #1884)
Nicholas S. Johnson (WVSB #10272)
Dinsmore & Shohl, LLP
900 Lee Street
Huntington Square, Suite 600
Charleston, WV 25301
304-357-0900 *telephone*
304-357-0919 *facsimile*

Gregory A. Belzley (KYSB #81890)
Dinsmore & Shohl, LLP
250 W. Main St., Suite 1400
Lexington, KY  40202
502-540-2300 *telephone*
502-585-2207 *facsimile*

Della Cline-Gentile (WVSB #5981)
128 East Second Avenue
Williamson, WV   25661
304-235-2323 *telephone*
304-235-0854 *facsimile*
*Counsel for Plaintiff*

_____

85482v2                                                           10