IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


**KATHERINE A. HOOVER, as the
duly appointed Administrator of
the Estate of Michael Tomasic,
deceased,**

        **Plaintiff,**

**v.**                                         **CIVIL ACTION NO. 1:07cv47**
                                                    **(Judge Keeley)**

**GEORGE TRENT, Administrator,
North Central Regional Jail,
et al.,**

        **Defendants**


## MEMORANDUM OPINION AND ORDER

Pending before the Court is the defendants' Motion for Partial Summary Judgment (Dkt. No. 51), which requires this Court to decide whether the plaintiff may prosecute a claim for the wrongful death of her son under 42 U.S.C. § 1983. For the reasons discussed below, the Court concludes that she may and **DISMISSES WITH PREJUDICE** all claims of the Plaintiff except those brought pursuant to 28 U.S.C. § 1983 for the wrongful death of Michael Tomasic.

### I. FACTUAL AND PROCEDURAL BACKGROUND

At 9:10 p.m. on the evening of September 29, 2005, the decedent, Michael Tomasic ("Tomasic"), was arrested on a misdemeanor charge and was transported to the North Central Regional Jail ("NCRJ"), where he was booked and admitted at

approximately 11:50 p.m.  According to his mother, the plaintiff, Katherine A. Hoover ("Hoover"), Tomasic was physically healthy upon his arrival at NCRJ but was placed on a 30 minute watch by medical personnel.

At 8:25 a.m. on the morning of September 30, 2005, jail personnel discovered Tomasic in his cell in an unresponsive condition.  He was then transported by ambulance from NCRJ to United Hospital Center in Clarksburg, West Virginia, where he was diagnosed as hypothermic.  Tomasic subsequently died on October 7, 2005, without ever regaining full consciousness.

On behalf of Tomasic's estate, on April 3, 2007, Hoover sued the West Virginia Regional Jail and Correctional Facility Authority ("RJCFA") and several employees of NCRJ for violations of Tomasic's constitutional rights, alleging use of excessive force, cruel and unusual punishment, and deprivation of life and liberty without due process of law.  Hoover amended her complaint on November 6, 2007, to allege that these constitutional violations occurred through assault and battery, deliberate indifference to medical needs, infliction of emotional distress, and wrongful death. Additionally, Hoover asserted supplemental claims for these torts under West Virginia Code § 55-7-5 and § 55-7-8.

**Memorandum Opinion and Order**

In their Motion for Partial Summary Judgment filed on February 27, 2008, the defendants argue that, because the RJCFA and its employees are not licensed healthcare providers as defined under the West Virginia Medical Professional Liability Act, W.Va. Code § 55-7B-2(g), they cannot be held liable for the plaintiff's medical negligence claims. Additionally, they argue that they are not liable for any claims of medical negligence because the RJCFA contracted all of its health care services to a third party, and the plaintiffs failed to follow the pre-filing requirements for medical negligence claims as prescribed under W.Va. Code § 55-7B-6.

Hoover asserts that the complaint only pleads claims for a violation of 42 U.S.C. § 1983 and the wrongful death of Tomasic, which she contends are supported by factual allegations. She acknowledges that the wrongful death claim included allegations of failure to provide required medical care and deliberate indifference to a serious medical condition. According to Hoover, however, these allegations are not intended to and do not set forth a cause of action for medical negligence.

## II. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). When ruling on a motion to dismiss, a judge must accept all of the factual allegations contained in the complaint as true. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).

> Under the Civil Rights Act of 1871:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Because the Civil Rights Act does not specifically address every cause of action or remedy available under it, Congress has authorized federal courts through 42 U.S.C. § 1988 to borrow appropriate rules for adjudicating § 1983 claims. Section 1988 directs courts to undertake the following three-step inquiry:

4

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

Burnett v. Grattan, 468 U.S. 42, 47-48 (1984)(citations omitted).

### III. ANALYSIS

**A. The Nature of the Plaintiff's Claims**

The parties dispute the nature of the legal claims asserted by Hoover in the complaint. After a careful review, the Court finds that the complaint sets out a cause of action for the deprivation of Tomasic's constitutional rights, in violation of 42 U.S.C. § 1983, which resulted in his death. In support of that constitutional claim, Hoover also alleges causes of action under West Virginia law for assault and battery, negligence, intentional infliction of emotional distress, and wrongful death. There is no claim for medical negligence asserted under the West Virginia Medical Professional Liability Act.

**B. Survival of the Plaintiff's § 1983 Claims**

Because Hoover's federal claims arise under § 1983 for constitutional violations resulting in Tomasic's death, a major

5

issue in this case is whether Hoover's claims survive Tomasic's death. Although the parties have not raised this issue, the Court necessarily must decide the matter before it can address the pending motion. To do so, it must undertake the three-part borrowing inquiry regarding the survival of § 1983 claims provided for in 42 U.S.C. § 1988.

Under § 1988, the first step in resolving whether a claim survives the death of the injured party is to determine if a suitable federal statute or constitutional provision exists. In Robertson v. Wegmann, 436 U.S. 584 (1978), the Supreme Court of the United States noted that "one specific area not covered by federal law is that relating to 'the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant.'" Id. at 589 (1978)(quoting Moor v. County of Alameda, 411 U.S. 693, 703 (1973)).

Because federal law does not address the survivability of actions under § 1983, the second step under § 1988 requires a court to consider applying "the common law, as modified and changed by the constitution and statutes of the [forum] State . . . ." 42 U.S.C. § 1988(a). At common law, an injured party's personal claim was extinguished upon his death. State statutes reversing this

have been adopted through § 1988 to apply to § 1983 claims. <u>Moor</u>, 411 U.S. at 702 n.14 (1973).

By statute, West Virginia has modified the common law rule. W.Va. Code § 55-7-8a provides that:

> (a) In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, <u>or injuries to the person and not resulting in death,</u> or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable. (Emphasis supplied).

West Virginia's modification of the common law, thus, only allows for survival of personal injuries that do not result in death. Because all of the injuries Tomasic allegedly suffered resulted in his death, Hoover's claims regarding those injuries abate under West Virginia law and cannot be pursued under § 1983.

Hoover's claim for Tomasic's wrongful death, however, is governed by a different statute. Under West Virginia's Wrongful Death Statute, West Virginia Code § 55-7-5:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages . . . then . . . the person who . . . would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured . . . .

Section 55-7-6 states that wrongful death suits are brought on behalf of the estate of the deceased, requires a damages trial by

7

jury, and provides a wide array of remedies including, but not limited to, damages for mental anguish, compensation for the loss of income and services of the decedent, any medical expenses relating to the injuries which caused the decedent's death, as well as reasonable funeral expenses. In addition to the damages specifically stated in the statute, the West Virginia Supreme Court has held that "in an appropriate case punitive damages may be recovered in an action for wrongful death." Bond v. City of Huntington, 276 S.E.2d 539, 545 (W.Va. 1981). See also McDavid v. U.S., 584 S.E.2d 226, 234 (W.Va. 2003)(reaffirming that juries can award punitive damages in wrongful death suits and that the legislature, in 1976, removed the monetary caps on such damages).

Although a claim for Tomasic's death is authorized by West Virginia's wrongful death statute, it is necessary to complete the third step of the § 1988 analysis and determine whether applying state law to § 1983 claims would be "inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a). The propriety of adopting a state wrongful death statute to pursue a § 1983 claim has not been addressed by either the Supreme Court of the United States or the Fourth Circuit Court of Appeals. This Court, therefore, must determine whether persuasive authority exists that may provide appropriate guidance.

**Hoover v. Trent, et al.**                                          **1:07cv47**

**Memorandum Opinion and Order**
---

The Court need look no further than to its sister district, the Southern District of West Virginia, to find authority holding that, under § 1988, claims based on West Virginia's wrongful death statutes may proceed under § 1983. See Green *ex rel.* Estate of Green v. City of Welch, 467 F.Supp.2d 656, 667 (S.D.W.Va. 2006)(Faber, J.); Jones v. George, 533 F.Supp. 1293, 1306 (S.D.W.Va. 1982)(Staker, J.).[1]

In Jones, the administratrix of the estate of a deceased prison inmate brought suit under § 1983, alleging false arrest and

---

[1] While a third case has held to the contrary, see Bell v. Bd. of Educ. of the County of Fayette, 290 F.Supp.2d 701, 709 (S.D.W.Va. 2003), this Court finds the reasoning in Bell unpersuasive. The court in Bell chose not to apply the West Virginia wrongful death statute because it found that the plaintiff's other § 1983 claims had abated under state law. See Bell, 290 F.Supp.2d at 709. Relying on the Supreme Court's holding in Moor that § 1988 does not authorize the federal courts to borrow entire causes of action from state law, the court dismissed the plaintiff's wrongful death claim because "the West Virginia wrongful death action, as a new and independent cause of action, is not available for borrowing under § 1988 to remedy deficiencies in the civil rights law . . . ." Id. at 708-09.
    As pointed out in Green, Bell failed to address whether allowing "the abatement of all § 1983 actions for constitutional violations so severe as to cause the victim's death" was inconsistent with the Constitution and laws of the United States, and, thus, did not apply the third step in the § 1988 borrowing inquiry. 467 F.Supp.2d at 663. Ultimately, the court in Green chose not to follow the holding in Bell because it 1) had not faithfully applied the three-part process contained in § 1988, and 2) did not protect the constitutional rights central to the Civil Rights Act. Id. at 664. The Court agrees with the analysis in Green.

9

false imprisonment, denial of adequate medical care, and wrongful death. After finding that the plaintiff's § 1983 claims, save any possible wrongful death claim, had abated under West Virginia law, the court analyzed whether an application of West Virginia's wrongful death statute satisfied the third step of the § 1988 inquiry. Jones, 533 F.Supp. at 1301-02. After an extensive analysis, it determined that these statutes provided sufficient remedies to meet the deterrence and compensation policies underlying § 1983. Id. at 1305 n. 23. Noting that a "lapse of these [§ 1983] claims would provide a windfall to the perpetrators of such misconduct," id. at 1303-04, the court adopted West Virginia's law on wrongful death through § 1988 and permitted the plaintiff's claim to proceed under § 1983. Id. at 1306.

The court in Green also denied dismissal of the plaintiff's § 1983 claim. Following the holding in Jones, it concluded that the claim could proceed under a theory of wrongful death. Id. at 663-64.

Beyond West Virginia, a number of cases support a decision to allow Hoover's § 1983 claim to proceed under a wrongful death theory. See Carringer v. Rodgers, 331 F.3d 844, 850 (11th Cir. 2003)(stating that Georgia's wrongful death statute is incorporated into federal law under § 1988); Andrews v. Neer, 253 F.3d 1052,

10

1057-58 (8th Cir. 2001)(holding that the Missouri wrongful death statute applies and provides the plaintiff with standing under § 1983 to sue on behalf of the decedent); <u>Baker v. Putnal</u>, 75 F.3d 190, 195 (5th Cir. 1996) (stating that "it is the law of this circuit that individuals who are within the class of people entitled to recover under Texas's wrongful death statute have standing to sue under § 1983 for their own injuries resulting from the deprivation of decedent's constitutional rights"); <u>Berry v. City of Muskogee</u>, 900 F.2d 1489, 1504-07 (10th Cir. 1990)(concluding that the federal courts must fashion a survival action, benefitting the estate of the decedent, that makes available sufficient damages to serve the deterrent function central to the purpose of § 1983); <u>Bass by Lewis v. Wallenstein</u>, 769 F.2d 1173, 1189-90 (7th Cir. 1985)(incorporating punitive damages available under the Illinois wrongful death statute in assessing damages for pain and suffering and deprivation of life under a § 1983 claim); <u>Jaco v. Bloechle</u>, 739 F.2d 239, 242-45 (6th Cir. 1984)(reversing dismissal of the plaintiff's § 1983 claims, despite the fact that Ohio's survival and wrongful death statutes do not give standing to the decedent's administratrix, because dismissal is contrary to the policies behind § 1983); <u>Ammlung v. City of Chester</u>, 494 F.2d 811 (3d Cir. 1974) (applying the statute

of limitations for wrongful death actions to § 1983 claims); Brazier v. Cherry, 293 F.2d 401, 407-09 (5th Cir. 1961)(stating that the Georgia wrongful death statute fills the gap in applying § 1983).[2]

The reasoning in these cases persuades the Court that Hoover's civil rights claim may proceed based on a wrongful death theory. Such a ruling serves the policy goals of § 1983 by deterring official misconduct and compensating the victim's estate. Hoover's state claims for assault and battery, negligence, and intentional infliction of emotional distress, however, abate under state law. As already noted, under West Virginia's survival statute only injuries not resulting in death survive. W.Va. Code § 55-7-8a. Because Hoover's complaint states that her claims resulted in Tomasic's death, they abate and are **DISMISSED WITH PREJUDICE**.

## IV. CONCLUSION

Because W.Va. Code §§ 55-7-5 through 55-7-8 provide a cause of action for wrongful death, and because application of these statutes is consistent with the policies behind § 1983, Hoover's § 1983 claims based on Tomasic's wrongful death may proceed.

---

[2] See also Bowling v. Oldham, 753 F.Supp. 588, 591-92 (M.D.N.C. 1990)(Erwin, J.)(finding that the North Carolina wrongful death statute was the appropriate law for measuring damages in a § 1983 claim).

However, because W.Va. Code § 55-7-8(a) does not allow for survival of claims for injuries that result in death, the plaintiff's other claims, including any purported claim for medical negligence, abate and are hereby **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record and all appropriate agencies.

Dated: August 1, 2008

/s/ Irene M. Keeley<br>
IRENE M. KEELEY<br>
UNITED STATES DISTRICT JUDGE