IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KATHERINE A. HOOVER, as the
duly appointed Administrator of
the Estate of Michael Tomasic,
deceased,
        Plaintiff,

vs.                                    Civil Action No. 1:07CV47
                                            (Judge Keeley)

GEORGE TRENT, Administrator,
North Central Regional Jail, et al,
        Defendants.

# ORDER/OPINION

This matter is before the undersigned United States Magistrate Judge pursuant to Plaintiffs' "Motion to Compel Responses of Defendant West Virginia Regional Jail and Correctional Facility Authority to Plaintiff's Second Set of Requests for Production of Documents" filed January 7, 2009 [Docket Entry 154], and Defendant's Response [Docket Entry 159] filed on January 21, 2009. No Reply was filed. The matter was referred to the undersigned by United States District Judge Irene M. Keeley.

On February 11, 2009, Plaintiff Katherine A. Hoover ("Plaintiff") appeared through counsel Charles M. Love, IV, and Defendants, West Virginia Regional Jail and Correctional Facility Authority, George Trent, et al, ("Defendants") appeared through counsel Dustin C. Haley for hearing on the motions.

**Background of the Case**

Plaintiff, the duly appointed administrator of the estate of Michael Tomasic, deceased, sued Defendants by Amended Complaint claiming damages under 42 USC 1983 and other state and federal statutes for the wrongful death of Michael Tomasic ("Tomasic"). Tomasic was housed in the

North Central Regional Jail on September 29 and 30, 2005, pending bond on misdemeanor trespassing charges. Within nine hours of his incarceration, Tomasic was found unresponsive in his cell. He was transported to United Hospital Center. Tomasic died October 7, 2005, without fully regaining consciousness. Plaintiff contends her deceased son was alternatively: 1) abused by inmates with the knowledge of the jail guards; 2) abused by guards; 3) arrived at the jail with injuries that the jail ignored; 4) ignored and treated with deliberate indifference by the guards; and 5) was sent to the hospital without disclosure by the jail of what injuries he had and how he had received them, all in violation of duties owed him by the jail and its jailers, thereby depriving him of the opportunity to be effectively treated by UHC and proximately resulting in his death.

**Discussion**

Plaintiff moves the Court to compel complete responses to Plaintiff's Second Set of Requests for Production of Documents numbers four, five, and six.

**Request Number 6**

During the hearing the parties advised the Court they had reached agreement regarding request number 6. The Court directed the parties to submit an agreed Order regarding the limitations on which the parties agreed, as well as a Protective Order, which they have. It appearing to the Court that, as of the date of entry of this Order, the parties have reached agreement regarding request number six, the motion to compel as regards that request is **DENIED AS MOOTED** by the agreement of the parties.

**Request Number 4**

Plaintiff's Request number four and Defendants' response to which are as follows:

All documents regarding the FBI investigations of the death of Michael Tomasic, including but not limited to, statement of the parties.

**RESPONSE**: Objection. Vague. Without waiving said objection, these defendants state that they are not in possession of documents produced by the FBI in relation to its investigation other than documents produced by Plaintiff's counsel regarding the status of the investigation; and documents entitled Letter from US Department of Justice requesting copies of reports for FBI investigation – 10/20/05, and Letter to G. Trent from Gary Wheeler, FBI – 10/20/05 included in Exhibit B of the Answers and Responses of Defendant West Virginia Regional Jail and Correctional Facility Authority to Plaintiff's First Set of Discovery Requests. To the extent that this request seeks documents originating from the defendants, defendants reassert the responses set forth in the **Answers and Responses of Defendant West Virginia Regional Jail and Correctional Facility Authority to Plaintiff's First Set of Discovery Requests**. In particular, defendants maintain all objections stated therein.

Defendants first argue that: 1) Plaintiff's motion to compel does not describe how this response is inadequate, and 2) Plaintiff does not make any argument as to why some other response is required and defendants believe they have made a complete response.

Although Defendants state that they are not in possession of any documents produced by the FBI except as included in the response, they do not say whether they are in possession of any documents originating <u>from</u> them and submitted <u>to</u> the FBI. It is Plaintiff's contention that Defendants turned the investigation over to the FBI, and documents that went to the FBI from Defendants would be responsive to the Request. Defendants counter that, as to any such documents that might exist, they <u>reassert</u> their responses to Plaintiff's <u>first</u> set of discovery requests.

**Request Number 5**

Plaintiff's Request number 5 and Defendants' Response thereto are as follows:

All statements taken by Lt. Shaver, including but not limited to the defendants.

**RESPONSE**: Objection. The requested information related to the investigation concerning Michael Tomasic is protected by the work product doctrine, and said information is privileged and not discoverable as the material was prepared in anticipation of litigation. Further, defendants object to production of this material under the privilege of self-critical analysis as to mandate production of these matters would chill the privilege of self-critical analysis. Without waiving said objections,

please refer to the privilege log attached as Exhibit A to **Answers and Responses of Defendant West Virginia Regional Jail and Correctional Facility Authority to Plaintiff's First Set of Discovery Requests**. Further, plaintiff previously failed to timely move for an order compelling the production of these items, and plaintiff has waived her right to seek the discovery of these documents.

Defendants argue as to Request 5 that Plaintiff's assertion that Defendants failed to state any ground or legal basis for the asserted privilege is erroneous, in that Defendants objected, at least in part, based on the work product doctrine.

The federal work product doctrine provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). Materials prepared by an agent are covered by the work product doctrine. Id. A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection, but "the primary motivating purpose" behind the creation of the document must be to aid in pending or impending litigation. See, i.e., Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust, 230 F.R.D. 398 (D. Md. 2005). "To invoke the doctrine, a party must show that the document was prepared principally or exclusively to assist in anticipated or ongoing litigation." Id. (quoting Burton v, R.J. Reynolds Tobacco Co., 170 F.R.D. 481 (D. Kan. 1997). Defendants argue that the statements obtained by Lt. Shaver were obtained as part of an investigation Lt. Shaver made in anticipation of a lawsuit. In support of this argument, Defendants attach a letter dated October 6, 2005, from attorney Jane Moran, making a Freedom of Information Act request to the North Central Regional Jail regarding Tomasic. They also attach Lt. Shaver's sworn affidavit, in which states that he conducted the investigation, including interviews, in anticipation of a civil lawsuit.

The fact that Defendants anticipated litigation, however, does not make all documents

thereafter generated subject to work product immunity. Id. The burden of showing that the withheld documents in the case were prepared in anticipation of litigation in this case rests with Defendants. Id. Plaintiff contends that even if Lt. Shaver's investigation and interviews were partly in anticipation of litigation, they were nonetheless necessitated by prison policy. Litigation was therefore not the "primary motivating purpose" of the investigation. Plaintiff submitted "West Virginia Jail and Correctional Facility Authority Policy and Procedure Statement," addressing "Internal Investigations." The Statement provides as follows:

> During the course of normal operation of regional jails the need for the conduct of internal investigations will arise from time to time. Such need may result from the occurrence of unusual incidents, or allegation of inappropriate or illegal conduct of inmates or staff . . . .
>
> 1. Each employee of the Authority has an affirmative duty to report unusual incidents and/or allegations of inappropriate or illegal conduct of inmates or staff to the Administrator, and/or Chief of Operations.
>
> 2. Upon notification of such allegations, the Administrator or designee shall investigate and resolve minor issues and report actions taken to the Chief of Operations or designee. Serious allegations or incidents shall be referred to the Chief of Operations.
>
> 3. Depending upon the seriousness of the allegation or incident, the Chief of Operations or designee shall conduct an investigation regarding the facts and circumstances of the allegations within a reasonable time.
>
> 4. If the Chief of Operations designates a staff member to complete the investigation, said staff member shall submit his or her findings to the Chief of Operations within a time period specified by the Chief of Operations. The Chief of Operations shall review the findings and report actions taken on minor matters, or recommendations for corrective action, in serious matters, to the Executive Director.

(Emphasis added). The Court finds that this policy required an investigation into what was clearly a very serious "incident," in which a person died, regardless of the reason. Defendants point out, however, that Lt. Shaver went beyond what would be a normal investigation, including interviewing

5

the woman who owned the home where Mr. Tomasic was alleged to have trespassed the night he was arrested. The Court notes that the investigation, from the privilege log alone, appears very thorough and detailed. Nevertheless, the Court cannot find that litigation was the "primary motivation" for the investigation, because the policy required most of the investigation undertaken, including the interviews of employees and inmates.

The Court need not reach the merits of this argument, however, because another of Defendants' arguments is dispositive of the issue.

At the conclusion of their Response, Defendants note:

> In Plaintiff's First Set of Discovery Requests, Plaintiff served requests similar to request number 5 . . . . Request number 5 requested statements which were also requested in the previous request number 20.

According to Defendants' argument, Request number 20, from Plaintiff's First Set of Discovery Requests, provided as follows:

> Please produce any and all documents concerning, prepared, taken or received as a result of the investigation of Michael Tomasic, his incarceration, his medical condition, his death, or any other facts related to Michael Tomasic, performed by the Defendant or anyone in its behalf, including all statements, pictures, videos, audiotapes, or computer data.
>
> RESPONSE: Objection. Vague and overboard. The request is so broad that it potentially calls for production of correspondence between defendants and their counsel which is absolutely protected by the attorney-client privilege and/or work product doctrine. Further, it requests information related to the investigation concerning Michael Tomasic that is protected by the work product doctrine, and said information is privileged and not discoverable as the material was prepared in anticipation of litigation and contains opinion work product of persons employed by the defendant. Further, your defendant objects to the production of this material under the privilege of self-critical analysis as to mandate production of this matter would chill the privilege of self-critical analysis. **A privilege log is attached as Exhibit A.** Without waiving said objection, defendant states that it is in possession of medical documents related to Doddridge County EMS and Ritchie County EMS, United Health Center, Healthnet Aeromedical Services, Ruby Memorial Hospital, STAT MedEvac, University of Pittsburgh Medical Center Presbyterian Hospital, and Cyril

6

Wecht, M.D. which are already in the possession of Plaintiff. Without waiving said objections, the following documents are available for inspection and copying at a mutually convenient time: See attached lists Exhibit B and Exhibit C.

(Emphasis added). Defendants then assert that the Answers and Responses of Defendant West Virginia Regional Jail and Correctional Facility Authority to Plaintiff's First Set of Discovery Requests were served on June 23, 2008, after which Plaintiff filed no motion to compel to seek production of any documents. Defendants argue that Plaintiff waived her right to file a motion to compel by not doing so within 30 days after the discovery response was due.

> A motion to compel . . . is deemed waived if it is not filed within thirty days after the discovery response or disclosure requirement sought was due...

L.R.Civ.P. 37.02. Defendants further argue that Plaintiff's Request number 4 in the present (Second) requests is an attempt "to circumvent the local rule and render it meaningless by serving the substantially similar request number 5 . . . .Plaintiff has waived her right to seek discovery of these documents."

A review of the docket sheet in this matter indicates that on May 21, 2008, Plaintiff submitted "Plaintiff's First Set of Discovery Request to Defendant West Virginia Regional Jail and Correctional Facility Authority" [Docket Entry 74.][1] The docket sheet further indicates that on June 23, 2008, Defendants served their "Answers and Responses of Defendant West Virginia Regional Jail and Correction Facility Authority to Plaintiff's First Set of Discovery Requests." The docket sheet

---

[1] The Court has only the Certificate of Service for this document, pursuant to L.R.Civ.P 5.01, which provides:

> Disclosure pursuant to Fed. R. Civ. P. 26(a)(1), (2), and (3), depositions upon oral examination or written questions and any notice thereof, notices of receipt of depositions, interrogatories, requests pursuant to Fed. R. Civ. P. 34, requests for admissions, and answers and responses thereto shall not be filed unless ordered or required under these Local Rules of Civil Procedure . . . ..

further indicates that on July 3, 2008, Defendants served their "Amended Privilege Log and Documents for Production - - Amended."

There is no entry on the docket sheet to indicate that any further action was taken regarding the Responses to Plaintiff's First Set of Discovery Requests, after July 3, 2008. L.R.Civ.P. 37.02 provides, in pertinent part:

> A motion to compel, or other motion in aid of discovery , is deemed waived if it is not filed within thirty days after the discovery response or disclosure requirement sought was due, which date is determined in accordance with a rule or by mutual agreement among the parties, unless such failure to file the motion was caused by excusable neglect or by some action of the non-moving party . . .

Defendants' argument in this regard is compelling. Plaintiff's Request Number 5 of the Second Set of Requests asks for: "All statements taken by Lt. Shaver, including but not limited to the defendants." The Court finds that documents reflecting "[a]ll statements taken by Lt. Shaver" would also have been responsive to Request 20 of the First Set of Requests, to wit:

> Please produce any and all documents concerning, prepared, taken or received <u>as a result of the investigation </u>of Michael Tomasic, his incarceration, his medical condition, his death, or any other facts related to Michael Tomasic, <u>performed by the Defendant or anyone in its behalf</u>, including <u>all statements</u>, pictures, videos, audiotapes, or computer data.

(Emphasis added).

Defendants Responded to Request 20 from the First Set of Requests, objected on various grounds, and produced a Privilege Log. Plaintiff did not file any motion to compel within thirty days after the response was due, or, indeed, at all. Plaintiff has therefore waived her motion to compel regarding this response. Plaintiff's Request number 5 of the Second Set of Requests simply narrows down the request to statements taken by Lt. Shaver, which would be encompassed by previous Request number 20. The Court finds that Plaintiff cannot "revive" this request by simply asking for

8

information again.

This does not end the discussion, however. Plaintiff claims:

> Through the discovery in this matter it has become apparent that Lieutenant Shaver has taken statements of various witnesses that were not included in the privilege log in this matter and those statement have not been provided. . . . .

If, as claimed by Plaintiff, Defendants failed to produce statements that would have been responsive to original (First) Request 20, and also failed to include them on the privilege log, it would be Defendants who waived their rights to object. See L.R.Civ.P. 26.04, which provides, in pertinent part:

> Objection to disclosures or discovery that are not filed within the response time allowed by the Federal Rules of Civil Procedure, the scheduling order(s), or stipulation or the parties . . . . which ever governs, are waived unless otherwise ordered for good cause shown.

Defendants counter that: "Plaintiffs further make the unsupported assertion that Lt. Shaver took statements of witnesses that were not included in the privilege log. Defendant is unable to respond to such an assertion unless plaintiff indicates who she believes was omitted from the privilege log." Plaintiff, on the other hand, asserts: "It appears that not only persons employed by the jail had statements taken but also inmates and collateral witnesses. See Exhibit 3 (Costa depo. at pp. 14-16.)"

In fact, however, the privilege log expressly includes entries referring to collateral witnesses and inmates. See, for example, Document Number 882: "Interview Transcript–11/30/05 Ruth Gillespie" and Document Number 222: "Interview Transcript . . . Inmate GC." The Court is aware from arguments at the hearing that Ms. Gillespie is the owner of the home where the alleged trespass by Mr. Tomasic took place. She was neither an inmate at nor employed by the jail. The Court also notes without knowing for certain, that "Inmate G.C.." referred to in Document Number 222, could

9

very well be the Gabriel Costa to whom Plaintiff refers in support of her contention that Defendants omitted statements from inmates from their privilege log. Regardless of whether GC is Gabriel Costa, however, it is obvious from the privilege log itself that Defendants took statements of inmates and collateral witnesses and included same on that log.

Plaintiff attached to her motion a transcript of testimony of former inmate Joey Lipscomb, taken on October 8, 2008, in which counsel for Plaintiff advises Lipscomb:

> You gave another statement to Lieutenant Shafer some weeks after that? The reasons I know that, and I will put on the record, is that I have been given a privileged [sic] log of the interviews that you gave to Lieutenant Shafer, and it indicated on the privileged [sic] log that you gave him two interviews, and it indicated what the dates were . . . . One of them was October 11, and the other one, I will give you in a second. It was some weeks after that.

Plaintiff cannot argue here that she just learned that inmates were interviewed by Lt. Shaver, where counsel expressly noted that he knew Lipscomb was interviewed twice because he saw the entries on the privilege log.

Finally, although Defendants do not argue waiver as to Request 4, the Court finds the same holds true for that request as for Request 5. Number 4 in the Second Set of Requests asks for: "All documents regarding the FBI investigations of the death of Michael Tomasic, including but not limited to, statement of the parties." Again, the Court finds this request is encompassed by previous request No. 20, which provides:

> Please produce any and all documents concerning, prepared, taken or received <u>as a result of the investigation</u> of Michael Tomasic, his incarceration, his medical condition, his death, or any other facts related to Michael Tomasic, <u>performed by the Defendant or anyone in its behalf</u>, including all statements, pictures, videos, audiotapes, or computer data.

(Emphasis added). As with Request 4, however, if there were documents submitted by the FBI to Defendants <u>or</u> submitted by Defendants to the FBI, these documents would have been responsive

10

to the original request. Therefore, if any such documents exist and Defendants failed to produce them or to include them on their privilege log, any objections they had as to those documents would be waived, and they would be required to produce same.

For all the above reasons, the Court finds that Plaintiff has waived her motion to compel regarding both Request number 4 and Request number 5

Upon consideration of all which, Plaintiff's Motion to Compel Responses of Defendant West Virginia Regional Jail and Correctional Facility Authority to Plaintiff's Second Set of Requests for Production of Documents [Docket Entry 154] is **DENIED**. In an abundance of caution, however, if Defendant failed to produce documents responsive to previous Request number 20, and also failed to include those documents on their prior privilege log, Defendants have waived their objections to producing such documents and shall produce them within ten (10) days of entry of this order. Defendants are further advised of their continuing duty to supplement.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: February 24, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE